## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| SCOTTRADE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:13-CV-01710 HEA |
| | ) | |
| VARIANT HOLDINGS, LLC, | ) | |
| VARIANT, INC., AND | ) | |
| STEPHEN C. WREN, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT VARIANT HOLDINGS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR COMPEL ARBITRATION

Defendant Variant Holdings, LLC ("Variant Holdings") hereby moves the Court to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, to compel arbitration pursuant to 9 U.S.C. § 4.  In support of its Motion, Defendant states as follows:

### INTRODUCTION & BACKGROUND

Plaintiff brings this action alleging that Defendant Variant Holdings, LLC breached the License Agreement entered into by the parties (Count I), and that Defendants Variant, Inc. and Stephen Wren tortiously interfered with the License Agreement at issue (Count II). Plaintiff's claim for breach of contract is made only against Defendant Variant Holdings, LLC, while Plaintiff's claim for tortious interference with a contract is made only against Defendants Variant, Inc. and Stephen Wren.[1]  Plaintiff seeks damages it claims would have received had it been a party to Defendants' lawsuits against various infringers of certain

---

1.  Defendants Variant Inc. and Stephen Wren move to dismiss Plaintiff's claims in a separate motion.

patents that were licensed to a joint venture formed by Plaintiff and Defendants as part of the agreement.  None of the infringers were named in the Complaint, nor did Plaintiff set forth the reasons it believes it would have been entitled to any recovery made by Defendants in the prosecution of such infringement.  Nevertheless, Plaintiff claims that Defendant Variant Holdings was in violation of the License Agreement for Variant's failure to perform various duties and obligations under the agreement.  In its Complaint, Plaintiff claims that the License Agreement is valid and enforceable, yet it fails to disclose to the Court that the License Agreement also contained a "Mediation and Arbitration" clause. (Plaintiff's Complaint, Exhibit B, ¶18).  Because there is a valid and enforceable arbitration provision in the agreement, this matter is not properly before this Court.  For the reasons set forth below, Plaintiff's claim for breach of contract against Variant Holdings should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, this Court should compel arbitration pursuant to 9 U.S.C. § 4.

## ARGUMENT

I.    **Plaintiff's Claim for Breach of Contract Should Be Dismissed Because This Court Lacks Subject Matter Jurisdiction Pursuant to Rule 12(b)(1).**

A.    **Legal Standard**

A motion challenging the court's subject-matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion can either attack the complaint's claim of jurisdiction on its face or it can attack the factual basis for jurisdiction.  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  *See also*, *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  The Eighth Circuit in *Osborn* found the distinction between facial and

factual attacks on the complaint under 12(b)(1) to be critical.  *Id.*at 729 (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977)).  The *Osborn* Court stated:

> In the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). . . . In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n.6 (citations omitted).  The Court noted that a factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen,*549 F.2d at 891).

Here, Defendant Variant Holdings makes a factual challenge to subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  The Court, however, need not consider matters outside the pleadings.  Plaintiff has, in Exhibit B of its Complaint, already provided the Court with a copy of the License Agreement entered into by Plaintiff and Defendant Variant Holdings, which is the agreement Plaintiff claims has been breached.  (Plaintiff's Ex. B).  The agreement contains an arbitration provision in paragraph 18, which is the subject of this motion.

**B.    Plaintiff Agreed to Submit Questions of Arbitrability To An Arbitrator, When It Incorporated American Arbitration Association Rules and Conditions Precedent Into the Arbitration Provision.**

Plaintiff's claim for breach of contract against Variant Holdings should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, because the parties incorporated American Arbitration Association Rules and conditions precedent into their agreement, thus the issue of arbitrability should be determined by an arbitrator.

In its Complaint, Plaintiff makes no mention of the fact that the agreement between the parties contains a "Mediation and Arbitration" provision, presumably to ignore the binding nature of the agreement to arbitrate.  Paragraph 18 of the License Agreement, which encompasses the arbitration provision, states as follows:

> If any dispute arises under this Agreement, the parties shall negotiate in good faith to settle such dispute.  If the parties cannot resolve such dispute themselves, then either party may submit the dispute to mediation in the locale of the other party by a mediator approved by both parties.  The parties shall both cooperate with the mediator.  If the parties cannot agree to any mediator, then they shall submit the dispute to arbitration by any mutually-acceptable arbitrator.  If no arbitrator is mutually acceptable, then they shall submit the matter to arbitration in the locale of the other party under the rules of the American Arbitration Association (AM).  Under any arbitration, both parties shall cooperate with and agree to abide finally by any decision of the arbitration proceeding.  If the AM is selected, the arbitration shall take place under the auspices of the branch of the AM nearest the other party.  The costs of the arbitration proceeding shall be born according to the decision of the arbitrator, who may apportion costs equally, or in accordance with any finding of fault or lack of good faith of either party.  The arbitrator's award shall be non-appealable and enforceable in any court of competent jurisdiction.

(Plaintiff's Ex. B, ¶18).

In addition, the License Agreement contains a separate "Controlling Law" provision, which states:

> This Agreement shall be construed, and the legal relationships between the parties hereto shall be construed, in accordance with the Laws of the State of Missouri.

(Plaintiff's Ex. B, ¶20).

The incorporation of the Rules of the American Arbitration Association in the License Agreement between Plaintiff and Variant Holdings provides a clear and unmistakable expression that the parties intended to leave the question of arbitrability to an arbitrator. In addition, the question of whether conditions precedent to an obligation to arbitrate have been met is a question of procedure that should also be submitted to an arbitrator.

### 1.    Incorporation of American Arbitration Association Rules

In 1986, the U.S. Supreme Court first articulated the now frequently-quoted rule that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitration is to be decided by the court, not the arbitrator." *See generally, AT&T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649 (1986). Then, in 1995, the Supreme Court decided *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995), which established the standard to be used by district courts reviewing arbitrator decisions on arbitrability. 514 U.S. at 943 (stating "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."); s*ee also Mitsubishi Motors Corp.* v. *Soler Chrysler Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("'[A]ny doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration'") (quoting *Moses H. Cone Memorial Hospital* v.

*Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).

      More recently, the Eighth Circuit in *Fallo v. High-Tech Institute*, 559 F.3d 874 (8th

Cir. 2009) held that the incorporation of AAA Rules into an arbitration provision clearly and

unmistakably demonstrates that the parties intended to arbitrate the question of arbitrability.

"'Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed

to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability'

turns upon what the parties agreed about that matter.'" *Fallo*, 559 F.3d 875 (citing *First*

*Options* 514 U.S. at 943). "Courts should not find that parties agreed to arbitrate the

question of arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'"

*Fallo*, 559 F.3d 875 (citing *AT&T Technologies,* 475 U.S. at 649). The *Fallo* Court held

that it must determine whether the parties to the agreement "clearly and unmistakably"

intended for an arbitrator to determine the question of arbitrability. *Id.; see also Green v.*

*Supershuttle Int'l, Inc.,* 653 F.3d 766, 768-69 (8th Cir. 2011) (holding that incorporation of

AAA rules evidenced the parties' agreement to "allow the arbitrator to determine threshold

questions of arbitrability.").

      In determining whether the parties to the agreement "clearly and unmistakably"

intended for an arbitrator to determine the question of arbitrability, the *Fallo* Court looked

to the arbitration provision itself, which stated that disputes arising out of the agreement

"shall be settled by arbitration in accordance with the Commercial Rules of the American

Arbitration Association ('AAA')." *Id.* At 876. The Court agreed with Defendant High-Tech

Institute and held that the act of incorporating AAA Rules clearly and unmistakably

demonstrated that the parties intended to arbitrate the question of arbitrability, because Rule

7(a) of the AAA Rules provides arbitrators with the authority to determine their own

jurisdiction. *Id.* Plaintiffs, on the other hand, argued that the governing law provision in the

agreement required the application of Missouri law, which stated that a court must

determine the issue of arbitrability. *Id.* (citing *Dunn Indus. Group, Inc. v. City of Sugar*

*Creek,* 112 S.W.3d 421, 428 (Mo. 2003)). The Court disagreed, however, noting that the

U.S. Supreme Court had already ruled that an arbitration provision's incorporation of the

AAA Rules supersedes a choice-of-law provision contained in the same agreement. *Id.*

(citing *Preston v. Ferrer*, 128 S.Ct. 978 (2008) ("the best way to harmonize the parties'

adoption of the AAA Rules and their selection of California law is to read the latter to

encompass prescriptions governing the substantive rights and obligations of the parties, but

not the State's special rules limiting the authority of arbitrators")). The *Fallo* Court

concluded, holding that "the arbitration provision's incorporation of the AAA Rules

supersedes Missouri law regarding the question of arbitrability." *Id.*

Here, Plaintiff and Defendant Variant Holdings agreed to submit questions of

arbitrability to an arbitrator when the parties incorporated the Rules of the American

Arbitration Association in the License Agreement. Rule 7(a) of the Rules of the American

Arbitration Association states that an arbitrator "shall have the power to rule on his or her

own jurisdiction . . ." Thus, in agreeing to submit the matter to arbitration "under the rules

of the American Arbitration Association" the parties unmistakably expressed their intent to

allow an arbitrator determine threshold questions of arbitrability. Accordingly, Plaintiff's

claim against Variant Holdings is not properly before this Court and should be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(1).

### 2.   Conditions Precedent

The arbitration provision in the License Agreement also contains conditions precedent or prerequisites, specifically stating that "[i]f ***any dispute*** arises under this Agreement, the parties ***shall*** negotiate in good faith" and then "either party may submit the dispute to mediation" before the parties "***shall*** submit the dispute to arbitration. . . ." (Plaintiff's Ex. B, ¶20) (emphasis added).  Thus, Plaintiff's claim should be dismissed for lack of subject-matter jurisdiction, because the question of whether conditions precedent to an obligation to arbitrate have been met is a question of procedure that should be submitted to an arbitrator.

The U.S. Supreme Court in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) was presented with the question of whether an applicable statute of limitations provision rendered an arbitration claim that fell outside of the limitations period non-arbitratable.  The Court held that "[a] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.  *Id.* at 84 (citing *First Options,* 514 U.S. at 943-946).  The Court also found the phrase "question of arbitrability" not applicable in circumstances where the parties would likely expect that an arbitrator to decide a gateway matter.  *Id.* at 84.   "Thus, 'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide."  *Id.*  (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration)).

The *Howsam* Court continued, stating:

> So, too, the presumption is that the arbitrator should decide "allegation[s]
> of waiver, delay, or a like defense to arbitrability." *Moses H. Cone
> Memorial Hospital, supra,* at 24-25, 103 S.Ct. 927. Indeed, the Revised
> Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the
> holdings of the vast majority of state courts and the law that has developed
> under the [Federal Arbitration Act]," states that an "arbitrator shall decide
> whether a condition precedent to arbitrability has been fulfilled." RUAA §
> 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002). And the comments add
> that "in the absence of an agreement to the contrary, issues of substantive
> arbitrability . . . . are for a court to decide and issues of procedural
> arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches,
> estoppel, and other conditions precedent to an obligation to arbitrate have
> been met, are for the arbitrators to decide." *Id.,* § 6, comment 2, 7 U.L.A.,
> at 13 (emphasis added).

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. at 84-85. The Court concluded, holding

that the applicability of a time limit rule in the arbitration provision "is a matter

presumptively for the arbitrator, not for the judge." *Id.* at 85.

In this instance, the arbitration clause in the License Agreement provides that ___***before***___

the parties "shall submit the dispute to arbitration. . . ." they (1) shall "negotiate in good

faith," and then (2) "may submit the dispute to mediation." While the requirement that the

parties mediate appears to be a voluntary prerequisite (the parties "*may*" submit the dispute

to mediation), it continues, stating that "if the parties cannot agree to any mediator, or if

either party does not wish to abide by any decision of the mediator, then they ___***shall***___ submit

the dispute to arbitration. . ." The parties clearly envisioned instances in which mediation

could fail, and they nevertheless agreed that attempts should be made to mediate before

submitting the matter to arbitration. Thus, the voluntary nature of this condition precedent

to the obligation to arbitrate is of no consequence. Requirements that the parties first

negotiate in good faith and then mediate before the parties submit the matter to arbitration are prerequisites not unlike time limits or notice, and the question of whether these conditions precedent to an obligation to arbitrate have been met is a question of procedure for an arbitrator to decide.  Accordingly, Plaintiff's claim against Variant Holdings is not properly before this Court and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**II.     In The Alternative, Plaintiff Should Be Compelled to Arbitrate Its Claims Against Variant Holdings Pursuant to 9 U.S.C. § 4.**

Should the Court determine that it has jurisdiction over this matter, Plaintiff should be compelled to arbitrate its breach of contract claim against Variant Holdings, because (1) the arbitration agreement is governed by federal law; and (2) the parties agreed to submit disputes arising under the License Agreement to arbitration.

**A.     This Court Should Compel Arbitration Because The Arbitration Agreement Is Governed By the Federal Arbitration Act.**

Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), to abolish the "longstanding judicial hostility to arbitration agreements" adopted by American courts.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  The Supreme Court recognizes that the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution."  *Preston v. Ferrer*, 128 S. Ct. 978, 981 (2008); *see also Morgan v. Smith, Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir. 1984) (the FAA comprises a "statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation.").  Section 2 of the Act provides that arbitration agreements contained in contracts involving

commerce are "valid, irrevocable, and enforceable"; Section 3 empowers federal courts to stay proceedings of issues referable to arbitration; and Section 4 directs courts to compel the parties to arbitration pursuant to the terms of their arbitration agreement.  9 U.S.C. §§ 2-4.

When considering a motion to compel arbitration, the Court must determine whether a valid agreement to arbitrate exists and then, whether the specific dispute or disputes fall within the scope of that agreement.  *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 679 (8th Cir 2001): *Larry's United Super, Inc. v. Werries,* 253 F.3d 1083, 1085 (8th Cir. 2001).  If these requirements are met, the court may stay the proceedings and compel the parties to arbitrate.  However, in a case where the parties have agreed that their arbitration agreement will be governed by state law, state arbitration law is not pre-empted by the FAA.  *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 470-71 (1989).  Thus, as a threshold matter, this Court should determine whether state or federal law applies to the arbitration provision in the License Agreement at issue.

### 1.    The FAA Is Applicable Because The Parties Did Not Invoke State Arbitration Law.

The Eighth Circuit in *UHC Management Co. v. Computer Sciences, Corp.*, 148 F.3d 992 (8th Cir. 1998) concluded it "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear."  *Id.* at 996-97; *see also Dominium Austin Partners, LLC v. Emerson,* 248 F.3d 720, 729 n.9 (8th Cir. 2001) ("The construction of an agreement to arbitrate is governed by the FAA unless the agreement expressly provides that state law should govern.").

The contract at issue in *UHC Management* contained an arbitration clause that was silent as to whether state or federal arbitration law applied, but it contained a choice-of-law clause, which stated, "[t]o the extent not preempted by ERISA or other federal law, this Agreement shall [be] governed by and construed under the laws of the State of Minnesota." 148 F.3d at 994.  The Eighth Circuit held that it could not devine an intent on the parties to preclude application of the FAA, stating:

> The agreement makes no reference to the Minnesota Uniform Arbitration Act or to Minnesota case law interpreting the allocation of powers between arbitrators and courts.  Moreover, the choice-of-law clause itself specifically provides that Minnesota law must yield whenever preempted by federal law, which cuts against the argument that the parties intended that the FAA not apply.

*Id.* at 997.

Here, the "Controlling Law" clause in the License Agreement is even more generic than the one addressed by the Eighth Circuit in UHC Management, as it provides only that: "This Agreement shall be construed, and the legal relationships between the parties hereto shall be construed, in accordance with the Laws of the State of Missouri."  (Plaintiff's Ex. B, ¶20).  It does not even state that it is *governed* by Missouri law, only that it is to be "construed in accordance" with Missouri Law.  Moreover, the Licensing agreement makes absolutely no reference to the Missouri Uniform Arbitration Act.  Indeed, the opposite is true.  Instead of referring to state law or state rules, the arbitration clause in the Licensing Agreement states that the parties shall submit the matter to arbitration "under the rules of the American Arbitration Association."  (Plaintiff's Ex. B, ¶18).  Such a generic choice-of-law clause, that is utterly silent regarding state arbitration rules governing the agreement

does not make the parties' intent to have federal courts apply state arbitration law "abundantly clear." *UHC Management,* 148 F.3d at 997; *see also P.R. Tel. Co. v. U.S. Phone MFG. Corp.,* 427 F.3d 21, 29 (1st Cir. 2005) (holding that "every circuit that has considered the question . . . [has] held that the mere inclusion of a choice-of-law clause within the arbitration agreement is insufficient to indicate the parties' intent to contract for the application of state law concerning judicial review of awards"), *cert. denied,* 126 S. Ct. 1785 (2006), *rev'd on other grounds by Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 128 S. Ct. 1396 (2008);  Thus, because it is not abundantly clear in the generic language of the agreement that the parties' intended to invoke state arbitration law over federal law, this Court should not read the Licensing Agreement as precluding the application of the FAA.

### 2.   The FAA Is Applicable Because The Arbitration Agreement Is In Writing And Involves Commerce.

The Court must also determine whether the arbitration clause contained in the License Agreement implicates commerce as contemplated by the FAA.  Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The statute sets forth a two-fold inquiry:  (1) is the arbitration clause in writing?; and if so, (2) is it part of a maritime transaction or a transaction involving interstate commerce? As to the first inquiry, there should be no dispute that the arbitration clause in the License

Agreement is in writing.  After all, the written License Agreement itself is attached as an exhibit to Plaintiff's Complaint.  (Plaintiff's Ex. B).   Therefore, the first requirement is met.

The second inquiry, specifically whether the License Agreement's arbitration clause was part of a transaction involving interstate commerce, cannot be disputed either.   The Supreme Court in *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, (2003) discussed the interpretation of the "involving commerce" requirement of Section 2, stating,

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause Power.  *Allied-Bruce Terminix Cos.,* 513 U.S. at 273-74, 115 S. Ct. 834.  Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas,* 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L.Ed. 2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of commerce," *Allied-BruceTerminix Cos., supra,* at 273 (internal quotation marks, citations and emphasis omitted) . . . . Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control."

*Citizens Bank,* 539 U.S. 52, 56-57 (2003).

In this instance, the License Agreement clearly does "implicate commerce" as required for application of the FAA.  The License Agreement involves the licensing of patent rights owned by a foreign company for an invention of a Texas resident to an Arizona company with its principal place of business in Missouri.  (Plaintiff's Complaint, ¶¶1-4).  The transaction and the accompanying payments for the patent licensed to Plaintiff necessarily implicate commerce as contemplated by Section 2 of the FAA.  Because the FAA is applicable here, the

Court must now determine whether the parties agreed to arbitrate the dispute in question.

**B.     This Court Should Compel Arbitration Because A Valid Agreement To Arbitrate Exists And The Dispute At Issue Falls Within The Scope Of The Parties' Agreement.**

Whether the parties have a valid arbitration agreement that binds them is a question for judicial determination. *Int'l Ass'n of Bridge, Structural, Ornamental and Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. and Const. Products, Inc.* 359 F.3d 954 (8th Cir. 2004) (citing *First Options,* 514 U.S. at 943-46); *see also Houlihan v. Offerman & Co., Inc.,* 31 F.3d 693, 694 (8th Cir. 1994) (noting that before a party can be compelled to arbitrate under the FAA, the district court must determine whether a valid agreement to arbitrate exists).   The Court considers a two-pronged analysis when considering a motion to compel under the FAA.   It must determine (1) whether a valid agreement to arbitrate exists; and (2) whether the specific dispute or disputes fall within the scope of that agreement.  *Pro Tech*, 377 F.3d at 871; *Gannon*, 262 F.3d at 679; *Werries,* 253 F.3d at 1085.

**1.     A Valid Agreement To Arbitrate Exists.**

Generally, courts apply ordinary state-law principles governing contract formation when deciding whether an agreement to arbitrate exists.  *First Options,* 514 U.S. at 949; *see also Schwan's Sales Enters., Inc. v. SIG Pack*, 476 F.3d 594 (8th Cir. 2007) (holding that a federal court sitting in diversity applies the choice of law rules of the forum state).   Even when the FAA applies, courts should apply state law to determine whether an agreement to arbitrate is enforceable based on common law contract principles.  *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and

enforceability of contracts generally."); *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988).

In this instance, Missouri is the forum state, and Missouri principles governing contract formation should be applied in this case.  Under Missouri law, any contract, including an arbitration contract, must contain the elements of offer, acceptance, and consideration.  *Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 737 (Mo. App. 2011).  While consideration may be monetary payments, Missouri courts also hold that mutual promises to arbitrate constitute valid consideration.  *Whitworth*, 344 S.W.3d at 742. The principle that mutual promises to arbitrate constitute sufficient consideration to support an arbitration agreement is well-established.  In *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15 (Mo. App. 2008), the court noted that when both parties agree to submit their claims to arbitration, the mutual promises provide sufficient consideration to support a valid contract.  *Id.* at 23 (citing *McIntosh v. Tenet Health Sys. Hosp. Inc.*, 48 S.W.3d 85, 89 (Mo. App. 2001) (arbitration agreement held enforceable where both parties agreed to submit "all claims and disputes" to arbitration); *Mueller v. Hopkins & Howard, P.C.*, 5 S.W.3d 182, 185 (Mo. App. 1999) (arbitration agreement enforceable when supported by mutual promises to arbitrate); *Boogher v. Stifel Nicolaus & Co. Inc.*, 825 S.W.2d 27, 29 (Mo. App. 1992) (same); *Lyster v. Ryan's Family Steak Houses*, 239 F.3d 943 (8th Cir. 2001) (Missouri law) (same)).  But in *Morrow,* the court was troubled by the fact that employees at Hallmark were bound by the company's dispute resolution program, but Hallmark was not obligated to submit claims to arbitration.  273 S.W.3d at 23. ("The only 'covered claims' are employment-related claims against the company. Thus, the arbitration program is 'non-mutual.'").   The court held that under Missouri law, the arbitration agreement was

unenforceable because it lacked mutuality, consideration, and was illusory.  *Id.*

Here, the arbitration agreement contained in the License Agreement contains all of the elements of a valid and binding arbitration agreement under Missouri law.  Scottrade and Variant Holdings, two sophisticated parties, entered into an agreement whereby Variant would license to the joint venture created with Scottrade its rights to certain patents in exchange for recurring payments.  The parties conceded to the terms of the agreement, and acceptance is manifested by the parties' signatures, thus, there is offer and acceptance. (Plaintiff's Ex. B, p.6).  As for consideration, Plaintiff would itself deny it failed to make payments as required, but it is enough that the parties' mutual promises to arbitrate constitute valid consideration under Missouri law. Plaintiff's claim in its Complaint that the License Agreement is a valid and enforceable, notwithstanding (Plaintiff's Complaint, ¶32), there should be no dispute that the elements of offer, acceptance, and consideration are present here.  Therefore, a valid and enforceable arbitration agreement exists.

**2.      The Dispute At Issue Falls Within The Scope Of The Parties' Agreement.**

Arbitration is also proper here because Plaintiff's claim against Variant Holdings for breach of contract fall squarely within the arbitration agreement's broad scope.  This Court must look to the contractual language, remembering that arbitration agreements are favored under the law and are to be broadly construed with any doubts resolved in favor of coverage.  *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002) ("absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration.").

The Supreme Court in *Howsam, supra,* identified the two critical questions that a court must decide when a party seeks to compel arbitration: (1) "whether the parties are bound by a given arbitration clause"; and (2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84. *See also EEOC v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007) (noting that in addressing a motion to enforce an arbitration agreement, courts generally ask only, "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement"); *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W. 3d 476, 480 (Mo. App. 2010) (holding that a court faced with a motion to compel arbitration, must determine "whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement") (citing *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. App. 2008)).  As is made clear above, the parties have a valid arbitration contract because the elements of offer, acceptance, and consideration are present.

Here, the parties agreed that "[i]f ***any dispute*** arises under this Agreement, the parties ***shall*** negotiate in good faith" and then "either party may submit the dispute to mediation" before the parties "***shall*** submit the dispute to arbitration. . . ."  (Plaintiff's Ex. B, ¶20) (emphasis added).  Notwithstanding the fact that Plaintiff failed to satisfy the prerequisites to arbitration, the language is abundantly clear that "any dispute" arising under the License Agreement falls within the scope of the arbitration agreement.  Even in a doubtful case, the Supreme Court has held that any doubts as to the scope of an arbitration agreement under the FAA are to be resolved in favor of arbitration. *Moses H. Cone*

*Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).   Accordingly, this Court should compel arbitration, because Plaintiff's claim for breach of contract is clearly a dispute that falls within the scope of the arbitration agreement of the License Agreement.

WHEREFORE, Defendant Variant Holdings requests that the Court dismiss this action as to them pursuant to Federal Rules of Civil Procedure 12(b)(1), or in the alternative, to compel arbitration pursuant to 9 U.S.C. § 4, award movants their costs in defending this action, including reasonable attorney's fees, and grant such other and further relief as the Court may deem just and proper.

Dated:  November 6, 2013                     Respectfully submitted,


/s/  Bridget L. Halquist
Bridget L. Halquist, #50317MO
CHACKES CARLSON & HALQUIST, LLP
906 Olive Street, Suite 200
St. Louis, Missouri 63101
Tel:  (314) 880-4472
Fax:  (314) 872-7017
bhalquist@cch-law.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby that on November 6, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon the following:

    Thomas E. Douglass
    John S. Kingston
    One US Bank Plaza
    St. Louis, Missouri 63101
    tdouglass@thompsoncoburn.com
    jkingston@thompsoncoburn.com

    **ATTORNEYS FOR PLAINTIFF**

I also hereby certify that on November 6, 2013, the foregoing was mailed by United States Mail to any non-participants in Electronic Case Filing.

        /s/  Bridget L. Halquist