IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTTRADE, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No.  4:13-CV-01710 HEA ) |
| VARIANT HOLDINGS, LLC, VARIANT, INC., AND STEPHEN C. WREN, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS VARIANT, INC. AND STEPHEN C. WREN'S MOTION TO DISMISS OR COMPEL ARBITRATION**

Defendants Variant, Inc. and Stephen Wren hereby move the Court to dismiss Plaintiff's Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to compel arbitration pursuant to 9 U.S.C. § 4.  In support of their Motion, Defendants state as follows:

**INTRODUCTION**

Plaintiff brings this action alleging that Defendant Variant Holdings, LLC breached the License Agreement entered into by the parties (Count I), and that Defendants Variant, Inc. and Stephen Wren tortiously interfered with the License Agreement at issue (Count II). Plaintiff's claim for breach of contract is made only against Defendant Variant Holdings, LLC, while Plaintiff's claim for tortious interference with a contract is made only against Defendants Variant, Inc. and Stephen Wren.  Defendant Variant Holdings, LLC moves to dismiss Plaintiff's claims against it in a separate motion.  [Doc. 11].

Plaintiff seeks damages it claims it would have received had it been a party to lawsuits filed by Defendants Stephen Wren and Variant, Inc. against various infringers of patents that were licensed to the joint venture created by Plaintiff and Variant Holdings, LLC.  Plaintiff claims that Stephen Wren, as the only known owner, officer, or employee of Variant Holdings, LLC, created Variant, Inc. in order to avoid his contractual obligations under the Licensing Agreement between Plaintiff and Variant Holdings, LLC, and in doing so, intentionally interfered with the agreement.  For the reasons set forth below, Plaintiff's claim for tortious interference with a contract against Variant, Inc. and Stephen Wren should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative, this Court should compel arbitration pursuant to 9 U.S.C. § 4.

## ARGUMENT

Plaintiff's claims against Variant, Inc. and Stephen Wren should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, because an action for tortious interference will not lie against a party to the relationship with which interference is alleged, thus Plaintiff has failed to sufficiently allege enough facts to state a claim to relief.

**I.     Plaintiff's Claim Against Defendants Variant, Inc. and Stephen Wren Should Be Dismissed For Failure To State A Claim Under Rule 12(b)(6).**

   **A.   Legal Standard**

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff.  *Eckert v. Titan Tire Corp.*, 514

F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir. 2005)).  The Court must also "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citations omitted).  A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  *Kaminsky v. Missouri*, No. 4:07-CV-1213, 2007 U.S. Dist. LEXIS 72316, at *5-6 (E.D. Mo. Sept. 27, 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Rule 12(b)(6) found in *Conley v. Gibson*, 78 S. Ct. 99 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp.*, 127 S. Ct. at 1965; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

      **B.**    **Plaintiff's Claim Of Tortious Interference Fails Because Such An Action Will Lie Against A Third Party Only.**

An action for tortious interference will not lie against a party to the relationship with which interference is alleged, and Plaintiff has failed to allege sufficient facts to show that Defendants Variant, Inc. and Stephen Wren are third parties for purposes of a claim of tortious interference under Missouri law.  Therefore, Plaintiff's claim against Defendants should be dismissed under Rule 12(b)(6) for failure to state a claim.

In diversity actions, federal courts apply the forum state's choice of law rules to determine applicable state law.  *John T. Jones Const. Co. v. Hoot Gen. Const. Co.*, 6213

F.3d 778, 782 (8th Cir. 2010) (citing *Cicle v. Chase Bank USA,* 583 F.3d 549, 553 (8th Cir. 2009)).  For purposes of this motion to dismiss, Defendants concede that Missouri law should apply.[1]

Under Missouri law, the elements of tortious interference with a contract or business expectancy are (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or expectancy; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages.  *Rice v. Hodapp,* 919 S.W.3d 240, 245 (Mo. banc 1996); *Serv. Vending Co. v. Wal-Mart Stores*, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002). Justification refers to a defendant's unqualified right to perform the act.[2]  *Id.*

Plaintiff seeks damages it claims would have received had it been a party to Defendants' lawsuits against the various infringers of the patents licensed to the joint venture created by Plaintiff and Variant Holdings via the Licensing Agreement.  Plaintiff, however, fails to identify any of the infringers Defendants were alleged to have pursued in violation of the agreement, and it fails to set forth the reasons it believes it would have been entitled to any recovery made by Defendants in the lawsuits relating to such infringement.  Notably, Plaintiff doesn't even allege the damages it claims to have suffered as a result of Defendants' alleged interference.  But as a threshold matter, Plaintiff's claim should be dismissed because it has failed to allege sufficient facts to show that Defendants Variant, Inc. and Stephen Wren are third parties for purposes of a claim of tortious interference.

---

1 For tort claims, Missouri courts apply the "most significant relationship" test  *Wolfley v. Solectron USA, Inc.,* 541 F.3d 819, 823 (8th Cir. 2008), which requires the court to consider (1) where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered.  Restatement (Second) of Conflicts of Laws § 145(2).

2 Defendants' justification will not be addressed, as it is not appropriately raised at this stage of the litigation.

An action for tortious interference with a business contract or expectancy will lie against a third-party only. *Zipper v. Health Midwest,* 978 S.W.2d 398, 419 (Mo. App. W.D. 1998) (citing *Century Management, Inc. v. Spring*, 905 S.W.2d 109, 114 (Mo.App.1995) and *White v. Land Clearance for Redevelopment Authority*, 841 S.W.2d 691, 695 (Mo.App.1992) ("An action for inducing a breach of contract will lie against only a third party, not a party to the subject contract." (citing *Downey v. United Weatherproofing, Inc.,* 363 Mo. 852, 253 S.W.2d 976 (1953); *Restatement of Torts,* § 766.)). "Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." 978 S.W2d at 419 (citing *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877, 879 (Mo.App.1993)). A party to the contract cannot be held responsible for inducing himself to commit a breach or for conspiring to breach it. To hold otherwise would be tantamount to permitting recovery of punitive damages in a contract action, which the Supreme Court of Missouri has declared to be improper. *White*, 841 S.W.2d at 695 (citing *Peterson v. Continental Boiler Works, Inc.,* 783 S.W.2d 896 (Mo. banc 1990)).

In support of its tortious interference claim against Variant, Inc. and Stephen Wren (Count II), Plaintiff claims it had a valid business contract and expectancy by virtue of the Licensing Agreement between Plaintiff and Variant Holdings, LLC. By Plaintiff's own admission, however, **"Wren controlled both Variant, Inc. and Variant Holdings. He is the only known owner, officer, or employee of either Variant, Inc. or Variant Holdings."** (Plaintiff's Complaint, ¶4) (emphasis added). As the only known owner, officer, or employee of either Variant, Inc. or Variant Holdings, Stephen Wren was acting

for both Variant, Inc. and Variant Holdings in his alleged interference, thus, he is both Variant, Inc. and Variant Holdings for purposes of Plaintiff's tortious interference claim. *Id.* at 879.   Plaintiff's claim, in effect, is that Defendants were tortiously interfering with their own contract.  *Century*, 905 S.W.2d at 114.  As recognized by the court in *Century*, an action for tortious interference with business expectancy will not lie against a party to the relationship with which interference is alleged.  *Id.*  Because Plaintiff premises its tortious interference claim on an alleged business expectancy with Variant Holdings, and Stephen Wren is "the only known owner, officer, or employee of either Variant, Inc. or Variant Holdings" Plaintiff's action against Variant, Inc. and Stephen Wren cannot be sustained. (Plaintiff's Complaint, ¶4).  Accordingly, this Court should dismiss Plaintiff's claim for tortious interference against Defendants for failure to state a claim upon which relief can be granted.

## II.     In The Alternative, Plaintiff Should Be Compelled to Arbitrate Its Claims Against Variant, Inc. and Stephen Wren Pursuant to 9 U.S.C. § 4.

In the interest of brevity, Defendants Variant, Inc. and Stephen Wren incorporate herein the arguments relating to the arbitrability of Plaintiff's claims as set fully forth in Defendant Variant Holdings, LLC Motion to Dismiss or Compel Arbitration [Doc. 11] and Memorandum in Support [Doc. 12].  Should this Court conclude that "a valid agreement to arbitrate exists," the Court must next determine "whether the specific dispute falls within the scope of that agreement."  *Houlihan v. Offerman & Co., Inc.,* 31 F.3d 693, 694 (8th Cir. 1994).  Plaintiff should be compelled to arbitrate its claim of tortious interference against Variant, Inc. and Stephen Wren, because such a claim falls comfortably within the scope of

the arbitration provision of the License Agreement.

> **A.   This Court Should Compel Plaintiff To Arbitrate Its Tort Claim Against Defendants Under The Doctrine Of Alternative Estoppel.**

Under the doctrine of "alternative estoppel," a non-signatory to an agreement can compel a signatory to arbitrate when the signatory's claims are so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement. *PRM Energy Sys., Inc. v. Pimenergy*, LLC, 592 F.3d 830, 834 (8th Cir. 2010) (citing *CD Partners, LLC v. Grizzle,* 424 F.3d 795, 798-99 (8th Cir. 2005) (recognizing that both agency theory and alternative estoppel provide independent basis for compelling arbitration); *see also Nesslage v. York Secs., Inc.,* 823 F.2d 231, 233 (8th Cir. 1987) (permitting a nonsignatory to compel arbitration where it was the "disclosed agent" of a signatory).

In *PRM Energy*, PRM licensed certain patents to Primenergy, L.L.C. through a network of agreements containing an arbitration clause.  After disputes arose between the two parties, PRM sued Kobe Steel, a potential sublicense, for tortious interference with, and inducement to breach the PRM/Primenergy agreements and with conspiring with Primenergy to convert PRM's intellectual property for their own use.  Kobe Steel successfully moved to arbitrate the dispute in the district court and the Eighth Circuit affirmed, holding "the nature of the alleged misconduct and its connection to the contract demonstrates the requisite relationships between persons, wrongs, and issues necessary to compel arbitration." *Id.* at 835.  The court called this form of estoppel "alternative

estoppel," relying on a concerted misconduct test from the Eleventh Circuit. *Id.* at 833 (citing *MS dealer Serv. Corp. v. Franklin*, 177 F3d 942, 947-48 (11th Cir. 1999) (compelling arbitration based on a close relationship between signatories and nonsignatories). The "alternative estoppel" theory adopted by the Eighth Circuit has been labeled "equitable estoppel in other circuits. *See, e.g.*, *Grigson v. Creative Artists Agency*, 210 F.3d 524, 528 (5th Cir. 2000) (holding that equitable estoppel applies "when a signatory to a contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract."). The Court stated:

> In *CD Partners*, we relied upon *MS Dealer* in which the Eleventh Circuit set forth the theory of concerted misconduct as a basis to compel arbitration when there is no agency or other close relationship between the signatory plaintiff and the nonsignatory defendant. *MS Dealer*, 177 F.3d at 947 ("[A]pplication of the contract containing the arbitration clause raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsisgnatory and on or more of the signatories to the contract.") (alteration and quotation omitted). The district court in the instant case, turning to MS Dealer as persuasive authority, imported the Eleventh Circuit's "concerted misconduct" basis for applying alternative estoppel.

*PRM Energy*, 592 F.3d at 834 (citing *MS Dealer,* 177 F.3d at 947).

Then, in *Donaldson Co., Inc., v. Burroughs Diesel, Inc.,* 581 F.3d 726 (8th Cir. 2009), the Eighth Circuit said that to warrant the benefit of alternative estoppel based upon concerted misconduct, "the plaintiff must specifically allege coordinated behavior between a signatory and a nonsignatory." *PRM Energy*, 592 F.3d at 835 (citing *Donaldson,* 581 F.3d at 734). In discussing its decision in *Donaldson*, the Court stated:

> We did not "suggest that a claim against a co-conspirator . . . will always be intertwined to a degree sufficient to work an estoppel." *Ross v. Am.*

> *Express Co.,* 547 F.3d 137, 148 (2nd Cir. 2008) (quotation omitted).  Rather, we stated, "the concerted-misconduct test requires allegations of  'pre-arranged, collusive behavior' demonstrating that the claims are 'intimately founded and intertwined with' the agreement at issue." *Donaldson*, 581 F.3d at 734-35 (quoting MS Dealer, 177 F.3d at 948).

*PRM Energy*, 592 F.3d at 835 (citing *Donaldson,* 581 F.3d at 734).

The Court in *PRM Energy* concluded, holding that it believed that the nature of the alleged misconduct and the connection to the contract demonstrates the requisite relationships between persons, wrongs, and issues necessary to compel arbitration.  *Id.*

> Collusive conduct between Kobe Steel and Primenergy allegedly arose from this potential relationship.  PRM alleges that Kobe Steel and Primenergy concealed their actions from PRM, conspired to violate the terms of the 1999 Agreements, and attempted to undermine the 1999 Agreements' contemplated authority over licensee and sub-licensee relationships.  The alleged collusive actions not only arose out of and targeted the 1999 Agreements, they were "intimately founded in and intertwined with" Primenergy's underlying contract obligations.  *Donaldson,* 581 F.3d at 735.  As such, we agree with the district court's conclusion that "PRM's claims either make reference to or presume the existence of the 1999 Agreements, and allege substantially interdependent and concerted misconduct by both the nonsignatory [Kobe Steel] and one or more of the signatories [Primenergy] to the contract."  Accordingly, the district court did not err in its reliance on a concerted-misconduct theory of alternative estoppel to grant non signatory Kobe Steel's motion to compel arbitration.

*PRM Energy*, 592 F.3d at 836.

Here, the nature of the alleged misconduct and the connection to the Licensing Agreement at issue demonstrates the requisite relationships between persons, wrongs, and issues necessary to compel arbitration.  Simply put, Defendant Variant Holdings, LLC could not be more intertwined with Defendants Variant, Inc., and Stephen Wren.  By Plaintiff's own admission, "Wren controlled both Variant, Inc. and Variant Holdings.  He is the only

known owner, officer, or employee of either Variant, Inc. or Variant Holdings." (Plaintiff's Complaint, ¶4). Plaintiff's Complaint further alleges that Stephen Wren "secretly formed a corporation (Variant, Inc.) and secretly granted an exclusive license for the Intellectual Property Right to that corporation." (Plaintiff's Complaint, ¶22). Wren is also specifically alleged to have "formed Variant, Inc." and "caused Variant Holdings to enter into an Exclusive License Agreement with Variant, Inc." (Plaintiff's Complaint, ¶¶23, 24), and that "Variant Holdings made Variant, Inc. the exclusive licensee" of certain patents. (Plaintiff's Complaint, ¶¶25, 26). Plaintiff's own allegations make reference to the License Agreement and point to substantially interdependent and concerted misconduct by both the non-signatories and the signatories to the contract. Stephen Wren, as the only known owner, officer, or employee of either Variant, Inc. or Variant Holdings, was acting for both Variant, Inc. and Variant Holdings in his alleged interference. Defendant Stephen Wren is alleged to have concealed his actions from Plaintiff, conspired to violate the terms of the Licensing Agreement by "secretly" forming Variant Inc., and "secretly" granted an exclusive license to the company in an attempt to avoid contractual obligations under the Licensing Agreement. (Plaintiff's Complaint, ¶¶22-26). The alleged collusive actions not only arose out of and targeted the Licensing Agreement, they were "intimately founded in and intertwined with" Variant Holding's underlying contract obligations. *PRM Energy*, 592 F.3d at 836 (citing *Donaldson,* 581 F.3d at 735). Under the doctrine of "alternative estoppel," this Court should compel Plaintiff to arbitrate its claim of tortious interference against Variant, Inc. and Stephen Wren, because Plaintiff's claims are so intertwined with the agreement containing the arbitration clause that it would be unfair to allow Plaintiff to rely

on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement. *Id.* at 834.

### B. This Court Should Compel Plaintiff To Arbitrate Its Claims Because The Broad Scope Of The Arbitration Agreement Includes Tort Claims Arising Out Of The Contractual Relationship.

The Court in *PRM Energy* also addressed the issue of whether PRM's claims against Kobe Steel were outside the scope of the arbitration clause of the agreements, noting that "'[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,' including 'the construction of the contract language itself.'" *Id.* at 836 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) and *Telectronics Pacing Sys., Inc., v. Guidant Corp.,* 143 F.3d 428, 430-431 (8th Cir. 1998) ("[A]ny doubts raised in construing contract language on arbitrability should be resolved in favor of arbitration."). "In determining whether the scope of the arbitration clause is broad enough to cover the claims at issue, we do not consider the fact that the defendant is not a party to the agreement containing the clause. *Id.* (citing *CD Partners,* 424 F.3d at 801 n.3). The Court determined that the arbitration clause at issue covered "all disputes arising under" the agreement, included "no limiting language" and was "generally broad in scope." *Id.* 836-37. The Court stated:

> Arbitration may be compelled under "a broad arbitration clause . . . as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision." It generally does not matter that claims sound in tort, rather than contract. *Hudson v. ConAgra Poultry Co.,* 484 F.3d 496, 499-500 (8th Cir. 2007) ("Under the Federal Arbitration Act, we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims."); *CD Partners,* 424 F.3d at 800 ("Broadly worded arbitration clauses are generally construed to cover tort suits arising from the same set of

Page 11 of 14

> operative facts covered by a contract between the parties to the agreement."). In light of the interpretive preference for arbitration, we have no trouble concluding that PRM's tort claims are "disputes arising under" the 1999 Agreements and are therefore within the scope of the broad arbitration clause.

*PRM Energy*, 592 F.3d at 837 (citations omitted).

In this case, the parties agreed that "[i]f ***any dispute*** arises under this Agreement, the parties ***shall*** negotiate in good faith" and then "either party may submit the dispute to mediation" before the parties "***shall*** submit the dispute to arbitration. . . ." (Plaintiff's Complaint, Ex. B, ¶20) (emphasis added). The language here covers "any dispute" arising under the agreement; it contains no limiting language and is broad in scope. *PRM Energy*, 592 F.3d at 836. The broad language of "any dispute" is construed to include tort claims arising from the contractual relationship at issue. *Id.* Even in a doubtful case, the Supreme Court has held that any doubts as to the scope of an arbitration agreement under the FAA are to be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Accordingly, this Court should compel arbitration, because Plaintiff's claim for breach of contract is clearly a dispute that falls within the scope of the arbitration agreement of the License Agreement.

WHEREFORE, Defendants Variant, Inc. and Stephen Wren request that the Court dismiss this action as to them pursuant to Federal Rules of Civil Procedure 12(b)(6), or in the alternative, to compel arbitration pursuant to 9 U.S.C. § 4, award movants their costs in defending this action, including reasonable attorney's fees, and grant such other and further relief as the Court may deem just and proper.

Dated:  November 12, 2013                    Respectfully submitted,


                                              /s/  Bridget L. Halquist
Bridget L. Halquist, #50317MO
CHACKES CARLSON & HALQUIST, LLP
906 Olive Street, Suite 200
St. Louis, Missouri 63101
Tel:  (314) 880-4472
Fax:  (314) 872-7017
bhalquist@cch-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

  I hereby certify that on November 12, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon the following:

 Thomas E. Douglass
 John S. Kingston
 One US Bank Plaza
 St. Louis, Missouri 63101
 tdouglass@thompsoncoburn.com
 jkingston@thompsoncoburn.com

 **ATTORNEYS FOR PLAINTIFF**


  I also hereby certify that on November 12, 2013, the foregoing was mailed by United States Mail to any non-participants in Electronic Case Filing.


            /s/  Bridget L. Halquist