UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTTRADE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13-cv-01710-HEA |
| ) | |
| VARIANT HOLDINGS, LLC, ) | |
| VARIANT, INC. and STEPHEN C. WREN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS
VARIANT, INC. AND STEPHEN C. WREN'S
<u>MOTION TO DISMISS OR COMPEL ARBITRATION</u>**

This Court should deny both Defendants' motion to dismiss and their alternative motion to compel arbitration [ECF No. 17].  Defendants' motion to dismiss relies on the false premise that Plaintiff Scottrade, Inc. ("Scottrade") sued Defendants Variant, Inc. and Stephen Wren for engaging in wrongful conduct **on behalf of Variant Holdings, LLC** ("Variant Holdings"). Scottrade, however, alleges that Mr. Wren and Variant, Inc. engaged in intentional and tortious conduct for their own benefit, not for the benefit of Variant Holdings.  That wrongful conduct was the formation of Variant, Inc., the transfer of patent rights to that separate legal entity and the exploitation of those patent rights solely for the benefit of Mr. Wren and Variant, Inc.  In addition, Variant, Inc. is neither a subsidiary nor a parent of Variant Holdings, LLC and Scottrade sued Mr. Wren as an individual who was acting for his own benefit (or for the benefit of Variant, Inc.).  Accordingly, Missouri law mandates denial of Defendants' motion to dismiss. *See Jones v. Paradies*, 380 S.W.3d 13, 17 (Mo. App. 2012) (motion to dismiss or compel

arbitration properly denied where corporate officers were sued for tortious interference in individual capacity for acting for their own benefit).

Defendants' alternative motion to compel arbitration is likewise fatally flawed. Without citing a single Missouri decision, Mr. Wren and Variant, Inc. contend they are entitled to compel arbitration based on an arbitration agreement to which neither Mr. Wren nor Variant, Inc. is a party — or even a signatory. But Defendants' key decision explicitly recognizes that state law controls whether a non-signatory can compel arbitration, *see PRM Energy v. Primenergy*, 592 F.3d 830, 835 (8th Cir. 2010), and the Missouri Supreme Court has explicitly rejected the arbitration theory that Defendants' urge this Court to adopt. *See Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361–62 (Mo. banc 2006) (rejecting contention that non-signatories to arbitration agreement "should be allowed to compel arbitration under the theory that the claims against them are '**inextricably intertwined**'" because "that theory is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties") (citing *Dunn Industrial Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. banc 2003) (Limbaugh, J.); *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 351 (Mo. banc 2006) (same). In this diversity case, those Missouri Supreme Court decisions are binding on this Court and mandate denial of Defendant's alternative motion to compel arbitration.

## BACKGROUND

In November of 2000, Scottrade and Variant Holdings entered into a License Agreement. Under that Agreement, Scottrade and Variant Holdings agreed to form a joint venture/partnership to develop and exploit patent rights related to "a system for electronically communicating between remote facilities and for facilitating transactions between central and remote facilities." Although the Agreement provided that both parties would jointly fund the

development of the patent rights, Scottrade paid in more than $700,000 and Variant Holdings paid in nothing. Variant, Inc. did not exist when the License Agreement was executed. Mr. Wren did not sign the License Agreement on behalf of Variant Holdings. *See* ECF No. 1-2 at 7.

Once it became apparent that the patent rights Scottrade and Variant Holdings were "jointly" developing might have significant value, Variant Holdings initiated an arbitration with the American Arbitration Association to terminate the partnership. The arbitrator rejected the claim, finding that "each party retains all of its rights under the License Agreement," and that each had a 50% funding obligation. This binding arbitration decision still stands.

Unable to dissolve the partnership between Scottrade and Variant Holdings, and seeking to avoid sharing any monies received from the patents, Mr. Wren formed an entirely new corporation – Variant, Inc. That corporation has no formal corporate affiliation with Variant Holdings. Variant Holdings is not an owner of Variant, Inc., Variant Inc. is not an owner of Variant Holdings. Variant Holdings transferred its patent rights to Variant, Inc. (in derogation of the provisions of the partnership agreement between Variant Holdings and Scottrade). Variant, Inc. then initiated dozens of patent infringement actions against other third parties. As a result, Scottrade believes Variant, Inc. and Wren collected very substantial sums, all of which rightfully should have been paid to Scottrade. **None of Variant, Inc.'s conduct or the conduct of Mr. Wren was for the benefit of Variant Holdings.**

Plaintiff Scottrade filed a two-count Complaint against Variant Holdings, Variant, Inc. and Mr. Wren. Count I alleged breach of contract against Variant Holdings and has now been dismissed without prejudice. *See* ECF No. 23. Count II alleges tortious interference with contract against Variant, Inc. and Mr. Wren which is the subject of Defendants' motion. Now faced with tortious interference claims against them, Variant, Inc. and Mr. Wren contend

Scottrade's claims should be dismissed because they are related to Variant Holdings and because equitable theories of estoppel compel arbitration of the "intertwined" tort claims against them. Both of Defendants' core arguments are contrary to established Missouri law. Therefore, this Court should deny Defendants' motion in its entirety.

## ARGUMENT

### I. Standard of Review.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all of the allegations in the Complaint must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Thus, a motion to dismiss should be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). (recognizing that dismissal is improper where a plaintiff's complaint states a plausible claim for relief).

### II. Scottrade has articulated a claim for tortious interference with contract against Variant, Inc. and Mr. Wren independent of any claim against Variant Holdings.

A cognizable claim for tortious interference with a contract under Missouri law requires (1) a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional interference, inducing or causing a breach of the contract, (4) an absence of justification and (5) damages. *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 895 (8th Cir. 2005) (*citing Serv. Vending Co. v. Wal-Mart Stores*, 93 S.W.3d 764, 769 (Mo. App. 2002)). Scottrade has plead facts that more than satisfy these requirements.

Scottrade alleges that both Variant, Inc. and Mr. Wren had knowledge of its contract with Variant Holdings. Mr. Wren interfered with that contract by forming Variant, Inc., which

likewise interfered by facilitating the secret transfer of Variant Holdings' intellectual property rights. Scottrade alleges that facilitating this secret transfer was an intentional interference with its rights under the License Agreement. Scottrade alleges that Variant, Inc. and Mr. Wren acted without justification and thereby caused potentially millions of dollars in damages by depriving Scottrade of the benefit of the same patent rights that Scottrade contracted with Variant Holdings (and paid over $700,000 of the costs) to develop. Accordingly, Scottrade's Complaint articulates all of the elements of a cognizable claim for tortious interference with contract.

Variant, Inc. and Mr. Wren seek to circumvent Scottrade's properly-pleaded tortious interference claim by relying on privity notions that simply are not present in Scottrade's Complaint. Variant, Inc. is not a parent or subsidiary of Variant Holdings and, contrary to Defendants' suggestion, Scottrade has sued Mr. Wren in his individual capacity, not as an officer, acting on behalf of Variant Holdings.

Scottrade's Complaint properly treats Mr. Wren, Variant, Inc. and Variant Holdings as separate, distinct legal entities. Variant Holdings is a Nevis limited liability company with an actual place of business in the West Indies. Variant, Inc. is a Wisconsin corporation with offices in Texas. Scottrade alleges that it executed a license agreement *solely* with Variant Holdings. Neither Mr. Wren nor Variant, Inc. signed that agreement. Thus, Count I (for breach of contract) was asserted *only* against Variant Holdings. By contrast, Count II (for tortious interference with that contract) is alleged *only* against Variant, Inc. and Mr. Wren. There is no question that Scottrade makes its tort claims against Variant, Inc. and Mr. Wren as nonsignatory, third parties.

Defendants cite *Zipper v. Health Midwest*, 978 S.W.2d 398 (Mo. App. 1998) and *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877 (Mo. App. 1993) in support of their motion to dismiss. But neither *Zipper* nor *Fields* applies here. In those cases, the plaintiffs alleged that the individual

defendant was a corporate officer was acting ***on behalf of*** the corporation that was the plaintiff's counter-party to the contract. Scottrade makes no such claim against Variant, Inc. or Mr. Wren.

In *Jones v. Paradies*, 380 S.W.3d 13, 17-18 (Mo. App. 2012), the Missouri Court of Appeals explained why neither *Zipper* nor *Fields* applies in circumstances such as those presented here. The Court explained that *Zipper* and *Fields* do not apply, and corporate directors are properly sued as individuals, where "the plaintiffs have alleged that the defendants acted through improper means, **not for the benefit of the corporation, but for defendants' own financial gain and self-interest.**" *Id.* (emphasis added) That is exactly what Scottrade alleges here. Just as the Missouri Court of Appeals rejected the defendants' reliance on *Zipper* and *Fields* in its *Jones* decision, this Court should reject Defendants' identical reliance in identical circumstances here.

Scottrade alleges that those defendants acted through fraudulent and improper means that benefited Variant, Inc. and Mr. Wren financially and were motivated thereby to avoid sharing monies with Scottrade. Scottrade makes no allegations that Variant Holdings—the sole signatory to the license agreement—benefited financially from the remaining Defendants' tortious interference with the agreement. To the contrary, Scottrade specifically alleges that "**Variant, Inc. has obtained in excess of a million dollars in settlement payments.**" Comp. (ECF No. 1) at 6.

Defendants contend that Mr. Wren cannot tortiously interfere with his own contract. But Variant Holdings—not Mr. Wren—is party to the License Agreement. Mr. Wren did not even sign the Agreement on behalf of Variant Holdings. Missouri law unequivocally instructs that a corporate officer is properly treated as a third party when he or she has engaged in intentional misconduct. *See id.*; *Lay v. St. Louis Helicopter Airways, Inc.*, 869 S.W.2d 173, 178 (Mo. App.

1993) (*quoting Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. banc 1990)) (emphasis added).

Mr. Wren created an entirely new corporation for the purposes of interfering with a valid and enforceable contract between Scottrade and Variant Holdings. Variant, Inc. then wrongfully pursued patent infringement suits on patent rights that it knew rightfully belonged to Scottrade. Such conduct constitutes intentional, improper conduct wholly separate from Variant Holdings' breach of contract. Accordingly, the Court should deny Defendants' request to dismiss the tortious interference with contract claims against them.

### III. Scottrade's claims against Variant, Inc. and Mr. Wren are not arbitrable because they are not parties to the arbitration agreement they seek to enforce.

Relying solely on their claim that Scottrade's tort claims are "**intertwined**" with the contract between Scottrade and Variant Holdings, Mr. Wren and Variant, Inc. request an order compelling arbitration pursuant to an arbitration agreement to which neither Mr. Wren nor Variant, Inc. is a party or signatory. Defendants' argument rests on their misplaced reliance on *PRM Energy v. Primenergy,*, 592 F.3d 830 (2010) which was decided under federal law and Arkansas law, not the contrary Missouri law which is controlling here. This Court must deny that request because the Missouri Supreme Court has already unequivocally rejected Defendants' intertwining contract theory. As the Court explained in *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361–62 (Mo. banc 2006):

> [T]o the extent these appellants contend that they should be allowed to compel arbitration under the related theory that the claims against them are "inextricably intertwined with those against [a party to the arbitration agreement]," that theory is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties.

(citing *Dunn Industrial Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. banc 2003) (Limbaugh, J.); *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 351 (Mo. banc 2006)

(same). *See also Springfield Iron & Metal, LLC v. Westfall*, 349 S.W.3d 487 (Mo. App. 2011) (recognizing that the Missouri Supreme Court had rejected "intertwined" claims and estoppel arguments identical to those asserted by Mr. Wren and Variant, Inc.).

"The Supreme Court has ruled that state contract law governs the ability of nonsignatory to enforce arbitration provisions."[1] *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir.2009) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)). *See also PRM Energy v. Primenergy* at 835. Ignoring the United States Supreme Court's instructions regarding the governing law, Defendants do not cite a single decision by a Missouri court in their argument for compelling Scottrade to arbitrate its discrete tort claims. Moreover, Defendants' key decisions do not even purport to consider Missouri law. *See id.* at 834 (stating that "we rely primarily upon the federal law" and considering Arkansas law); *Donaldson*, 581 F.3d at 732 (applying Mississippi law); *Nesslage v. York Sec., Inc.*, 823 F.2d 231, 232 (8th Cir. 1987) (applying federal law).

In *Springfield Iron,* third-party defendants that were not parties to a contract containing an arbitration agreement sought to compel arbitration of tort claims brought by an entity that had signed the subject contract. Like Variant, Inc. and Mr. Wren, the third party defendants argued that they were entitled to compel arbitration because (1) they each had a "close relationship" with a signatory to the arbitration agreement, (2) arbitration of all claims was more efficient than piecemeal litigation, and (3) the claimant should be estopped from asserting claims relating to the subject contract while avoiding the arbitration provision in same. *Springfield Iron*, 349 S.W.3d at 490-91. The Missouri Court of Appeals rejected each of these arguments. Relying on

---

[1] In their memorandum in support of motion to dismiss, Defendants "concede that Missouri law should apply." ECF No. 18 pp. 3-4.

the Missouri Supreme Court's decisions in *Netco, Inc.* and *Nitro Distributing*, the Court rejected the "close relationship" argument, finding that compelling the "arbitration of non-signatory claims—even those 'inextricably intertwined' with signatory claims—'is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties.'" 349 S.W.3d at 490 (*quoting Netco, Inc.* 194 S.W.3d at 361-62; *Nitro Distributing*, 194 S.W.3d at 351).

The court likewise rejected the nonsignatories' efficiency arguments—noting that the claimant "did not agree to arbitrate with these non-signers" and finding "we are not free to erode arbitration's voluntary nature for the sake of judicial convenience." 349 S.W.3d at 491 (citing *Netco, Inc.* and *Nitro Distributing*).[2]

Finally, the *Springfield Iron* Court found that the Missouri Supreme Court had already rejected the estoppel arguments asserted by the non-signatories. Rebuffing the argument that the claimant should not have been allowed to "formulate his claims against the non-signatories yet disavow the part of the agreement that contains the arbitration provision," the court noted that "[e]stoppel in this context usually involves a defendant alleged to be liable under the terms of a contract he did not sign (*e.g.*, a third-party beneficiary)." 349 S.W.3d at 491 (citation omitted) (alternation in original). This was not the case in *Springfield Iron, Netco,* or *Nitro.* It is not the case here either. Scottrade is not pursuing breach of contract claims against Variant, Inc. or Mr. Wren. Because Scottrade does not allege that Variant, Inc. or Mr. Wren are liable under the terms of the License Agreement, binding Missouri Supreme court precedent precludes Defendants' attempts to apply estoppel.

---

[2] The United States Supreme Court rejected the idea that intertwining of arbitrable claims with non-arbitrable claims justifies forcing parties to litigate claims they agreed to arbitrate or vice versa in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983).

## CONCLUSION

Defendants' motion to dismiss must be denied because Scottrade does not contend Mr. Wren or Variant, Inc. acted for the benefit of Variant Holdings. Binding Missouri Supreme Court precedent mandates denial of Defendants' motion to compel arbitration. Accordingly, this Court should deny Defendants' motion in its entirety.

Respectfully submitted,

THOMPSON COBURN LLP


By /s/ Thomas E. Douglass
   Thomas E. Douglass, #23019MO
   John S. Kingston, #51403MO
   Felicia R. Williams, #63321MO
   One US Bank Plaza
   St. Louis, Missouri  63101
   314-552-6000
   FAX 314-552-7000
   tdouglass@thompsoncoburn.com
   jkingston@thompsoncoburn.com
   fwilliams@thompsoncoburn.com

*Attorneys for Plaintiff Scottrade, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Thomas E. Douglass