UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTTRADE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13CV1710 RLW |
| | ) |
| VARIANT, INC., and | ) |
| STEPHEN C. WREN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, to Compel Arbitration (ECF No. 94). The motion is fully briefed and ready for disposition.

## I. Background

Defendant Stephen Wren is the inventor of certain new and useful improvements in a system for electronically communicating between remote facilities and for facilitating transactions between central and remote facilities. (First Am. Compl. ["FAC"] ¶ 9, ECF No. 89) These inventions are the subject of three patents ('514, '044, and '900). (*Id.*) On November 6, 2000, Wren assigned his intellectual property rights in the inventions to Variant Holdings, LLC ("Holdings"). (*Id.* at ¶ 10) On that same date, Plaintiff Scottrade, Inc. ("Scottrade") entered into a License Agreement with Holdings, creating a partnership ("Partnership") to exploit patent rights and know how associated with the inventions. (*Id.* at ¶¶ 11, 17-25)

According to the License Agreement, Holdings and Scottrade each had 50% ownership of the Partnership.[1] (FAC ¶12; License Agreement ¶ 8(a), ECF No. 1-2) Scottrade claims that, despite the obligation of each party to fund 50% of the Partnership, Scottrade provided $700,000 in funding, and Holdings provided none. (FAC ¶ 12) The License Agreement also granted to Scottrade a nonexclusive, non-assignable license to use Holdings' intellectual property rights throughout the U.S. and all foreign countries and an exclusive, non-assignable license to use Holdings' intellectual property rights throughout the U.S. with regard to financial service companies. (FAC ¶ 24; License Agreement, ¶ 3) In addition, the License Agreement allowed Holdings to license the rights for use of future patents to others with whom Holdings formed a license agreement, subject to Scottrade's right of first refusal. (FAC ¶¶ 21-22; License Agreement ¶¶ 4, 5) Scottrade had the right to enter into any subsequent agreements concerning the intellectual property rights to the exclusion of a third party within 60 days from the time Scottrade was notified in writing of the terms of the third party agreement. (FAC ¶¶ 21-23; License Agreement ¶ 5) Holdings could terminate the agreement if the Partnership defaulted in making any payment or report in accordance with the agreement; if it became insolvent; or if a receiver was appointed to take over Partnership's business. (License Agreement ¶ 15) If a dispute arose, the parties agreed to submit to arbitration and abide finally by any decision of the arbitration proceeding. (*Id.* at ¶ 18)

In May 2004, Wren, though Holdings, initiated arbitration with the American Arbitration Association, seeking to terminate the Partnership and obtain a determination that Scottrade was obligated to pay 100% of the Partnership's costs. (FAC ¶ 13) The Arbitrator found that each

---

[1] The Court may "consider public records or materials that are necessarily embraced by the pleadings" when ruling on a motion to dismiss under Rule 12(b)(6). *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1011 (E.D. Mo. 2014) (citations omitted).

2

party retained all of its rights under the agreement and that each party was responsible for 50% of the costs, with any amounts contributed by Scottrade in excess of 50% was an advance. (FAC ¶¶ 14, 71-72; Award of Arbitrator, ECF No. 1-3) Despite this Award of Arbitrator, Wren/Holdings refused to comply with the funding obligation and contended that the Partnership was terminated. (FAC ¶ 15, 73)

According to Plaintiff Scottrade, Wren secretly formed a corporation called Variant, Inc. ("Variant"), in order to avoid his contractual obligations under the License Agreement and keep the financial value in the Intellectual Property Rights to himself. (FAC ¶ 26) Wren granted an exclusive license for the Intellectual Property Rights to this new corporation instead of giving Scottrade its right of first refusal. (*Id.* at ¶ 27-31) Thus, Variant became the exclusive licensee of patents '900 and '044, issued on May 27, 2008 and November 24, 2009, respectively. (*Id.* at ¶¶ 19-20, 30-31) Variant obtained the rights to enforce the patent and sue alleged infringers. (*Id.* at ¶¶ 30-31) Wren and Variant did not notify Scottrade in writing or otherwise that Holdings planned to enter into an exclusive license with Variant. (*Id.* at ¶ 32) Shortly thereafter, Variant began filing numerous lawsuits against a variety of entities, including entities in the U.S. financial services industry, for infringement of the '044 and '900 patents. (*Id.* at ¶ 33) Scottrade maintains that Variant obtained in excess of $4 million dollars in settlement payments, which Scottrade was entitled to. (*Id.* at ¶ 34) Scottrade learned of the lawsuits when a defendant in one of the infringement actions subpoenaed Plaintiff Scottrade. (*Id.* at ¶ 35)

Scottrade's First Amended Complaint alleges Alter Ego Liability between Wren, Holdings, and Variant (Count I); Tortious Interference with Contract against Wren and Variant (Count II); Unjust Enrichment against Wren (Count III); Constructive Trust against Wren (Count

IV); and an Action to Enforce Arbitration Award against Wren (Count V). Defendants filed a Motion to Dismiss all counts contained in the First Amended Complaint.

## II. Legal Standard

With regard to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While the Court cautioned that the holding does not require a heightened fact pleading of specifics, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *Id.* at 556.

Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff). Further a court should not dismiss the complaint simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Twombly*, 550 U.S. at 556. However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v.*

4

*Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

## III. Discussion

### A. Tortious Interference

Under Missouri law,[2] to prove a claim for tortious interference with a contract or business expectancy, a plaintiff must show: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012) (citation omitted). Defendants maintain that Scottrade is unable to establish tortious interference because an action for tortious interference will not lie against a party to the relationship, and Scottrade has failed to allege sufficient facts that Defendants are third parties. Scottrade, on the other hand, asserts that U.S. District Judge Henry E. Autrey previously found that Plaintiff had stated a cognizable claim for tortious interference based on the same allegations contained in the First Amended Complaint. Upon review of the motion and related memoranda, the Court finds that Scottrade has stated a claim for tortious interference such that dismissal is not warranted.

---

[2] The parties do not dispute that the substantive law of Missouri applies in this diversity case.

Scottrade has pled that Wren took the actions to incorporate Variant and then exploit the patents with regard to Defendant Variant, not Holdings, with which Scottrade had the agreement. Judge Autrey noted the parties' relationship in light of the relevant Missouri law regarding tortious interference and found that dismissal was improper. Indeed, Judge Autrey stated, "Defendants argue that because Plaintiff has alleged that Wren controlled both Variant, Inc. and Variant Holdings, and that Wren was the only known owner, officer or employee of either, there can be no tortious interference claim against them because one cannot tortiously interfere with a contract to which that person or entity is a party." (Op., Mem. and Order of January 31, 2014 p. 5, ECF No. 41) However, Judge Autrey noted Plaintiff's allegations that "both Defendants [Wren and Variant, Inc.] intentionally interfered with Variant Holdings, LLC's performance under the License Agreement by causing Variant Holdings to enter into a separate agreement with Variant, Inc." (*Id.*) Judge Autrey found that Scottrade sufficiently pled that Wren and Variant took individual and independent actions, not on behalf of Holdings, when Defendants tortiously interfered with the contract between Scottrade and Holdings, subsequently denying the motion to dismiss. (*Id.*)

Defendants contend, however, that the First Amended Complaint alleges new interconnectedness of the parties and demonstrates that Wren and Variant are not third parties for purposes of a tortious interference claim. While the Amended Complaint adds an alter ego theory of liability, the original complaint set forth similar allegations that Wren controlled both Variant, Inc. and Variant Holdings and was the only known owner, officer, or employee of either company. (Compl. ¶ 4, ECF No. 1) Judge Autrey considered and rejected Defendants' argument that Wren controlled both companies such that Scottrade could not allege tortious interference with a contract. (Op., Mem. and Order of January 31, 2014 p. 5, ECF No. 41) The

Court finds no reason in Defendants' renewed motion to dismiss to disturb Judge Autrey's determination.[3]

### B. Unjust Enrichment

In the Motion to Dismiss and the Motion for Summary Judgment, Wren argues that Scottrade may not bring an unjust enrichment claim where there is an express contract between the parties on the same subject matter. The Court disagrees. Missouri law does not allow recovery under both an express contract and equitable theories of relief. *Level 3 Commc'ns, LLC v. Illinois Bell Tel.Co.*, No. 4:14-CV-1080 (CEJ), 2014 WL 414908, at *6 (E.D. Mo. Feb. 4, 2014) (citation omitted). However, a plaintiff may plead alternative claims for relief in the complaint. *Id.*; *see also Superior Edge,* No. 12-2672 (JRT/FLN), 2014 WL 4414764, at *6 (D. Minn. Sept. 8, 2014) (citations omitted) ("In reliance upon the Rule 8, federal courts in Missouri have consistently denied motions to dismiss quasi-contract claims even where the pleading also alleges the existence of an express contract."). Thus, the Court will allow Scottrade's alternate claim for unjust enrichment and deny Wren's motion to dismiss with respect to the unjust enrichment count.

### C. Constructive Trust

Next, Wren contends that Scottrade is unable to show a genuine issue of material fact with regard to its claim for constructive trust. "A constructive trust is a device employed by a court of equity to provide a remedy in cases of actual or constructive fraud or unjust enrichment." *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 638 (Mo.

---

[3] Further, the fact that Scottrade regards the entities as one and the same for recovery of damages does not change the facts alleged by Scottrade that Wren interfered with its license agreement with Holdings. *See Kellett v. Wofford Bros. Servs., Inc.*, No. 4:08CV322MLM, 2010 WL 2681304, at *3 (E.D. Mo. July 2, 2010) (finding that piercing the corporate veil was appropriate to collect judgment from the defendant).

7

Ct. App. 2004) (citation omitted). A plaintiff may seek to impose a constructive trust on the proceeds of the property which are in the hands of the wrongdoer. *Id.* In *Boyce*, the Missouri Court of Appeals found that the trial court erred in imposing a constructive trust on the proceeds of the sale of property where plaintiffs failed to allege or establish any identifiable property or fund to which the proceeds could be traced. *Id.* at 638-39. While the unjust enrichment count may stand, the Court agrees with Wren that Scottrade is unable to identify either property or a traceable fund, but merely alleges that such funds exist. As is *Boyce*, "[n]othing in the record shows that [plaintiff is] entitled to more than a money judgment." *Id.* at 639. Indeed, "'the very essence of the remedy of a constructive trust is the identification of specific property or funds as the res upon which the trust may be attached.'" *Ralls Cty. Mut. Ins. V. RCS Bank*, 314 S.W.3d 792, 795 (Mo. Ct. App. 2010) (quoting *Blue Cross Health Servs., Inc. v. Sauer*, 800 S.W.2d 72, 76 (Mo. Ct. App. 1990)). Scottrade has not alleged any traceable fund such that its claim for Constructive Trust claim will be dismissed.[4]

### D. Action to Enforce Arbitration Award

Defendants next claim that Scottrade has failed to state a claim for an action to enforce the arbitration award because the award pertained to Holdings, not Wren and Variant, and Holdings is not a party to this action. As stated above, Scottrade has pled that Wren, Variant, and Holdings are alter egos for the purposes of recovery of damages.

---

[4] The Court notes for illustrative purposes only, that while Scottrade argues in its response to the Motion to Dismiss that Defendants had not allowed Scottrade to discovery the identity of the specific accounts and funds, Scottrade does not identify any traceable funds in its response to the Motion for Summary Judgment filed after the close of discovery. Further, Scottrade did not file any motion to compel said discovery.

However, Defendants also contend that Scottrade is out of time to seek enforcement of the arbitration award under 9 U.S.C. § 9 of the Federal Arbitration Act, which provides that a party to the arbitration may apply to the court for an order confirming the award within one year. While this deadline is permissive, Scottrade has failed to show in the pleadings that seeking to enforce an arbitration award 10 years after issuance of that award is reasonable. *See Wachovia Secs., LLC v. Riddle*, No. , 2006 WL 2128011, at *1-2 (D. Neb. July 26, 2006) (finding the law in this circuit under 9 U.S.C. § 9 is a permissive statute for purposes of the 1-year limitation on filing for confirmation of arbitration award and confirming award pursuant to a motion filed 14 months after the award was issued). Further, while Scottrade invokes Missouri statutes, Mo. Rev. Stat. §§ 516.110 and 516.120, to extend the statute of limitations for the arbitration award and other forms of breach, Scottrade presents no support that these statutes apply to arbitration awards. To the extent Scottrade is alleging "other" breaches of contract, Count V pertains to the Arbitration Award. Thus, the Court finds that Scottrade is unable to state a claim that is plausible on its face for enforcement of the Arbitration Award.

### D. Alter Ego Liability

Defendants first argue that, because Scottrade has failed to state a claim on any of the other counts in its First Amended Complaint, Scottrade's claim for alter ego liability automatically fails. However, the Court has found that dismissal under Rule 12(b)(6) is not warranted for Scottrade's tortious interference and unjust enrichment claims, such that there may be liability attached to Wren.

Defendants also contend that Scottrade is unable to establish the required elements for piercing the corporate veil. To state a claim for piercing the corporate veil, a plaintiff must plead (1) control and complete domination of policy and business practice with respect to the

transaction attacked; (2) defendant used the control to commit fraud or wrong, to perpetrate the violation of a positive legal duty, or to commit a dishonest and unjust act; and (3) that control and breach of duty was the proximate cause of the injury or unjust loss. *Collet v. Am. Nat'l Stores, Inc.*, 708 S.W.2d 273, 283 (Mo. Ct. App. 1986). While Missouri law ordinarily protects the separate identities of two corporations, "[i]f one corporation exercises such control over the other that the latter becomes a mere alter ego of the first, . . . , and if the formal corporate separateness and arrangements between the two corporations are used to achieve fraud, injustice, or an unlawful purpose, a court may ignore the separate formal corporate structures and 'pierce the corporate veil' of the controlling corporation." *Radaszewski v. Contrux, Inc.*, 891 F.2d 672, 674 (8th Cir. 1989) (citation omitted).

Here, the Court finds that Scottrade has sufficiently alleged alter ego liability. Scottrade alleges that Wren had control over Holdings and Variant. Further, Scottrade contends that Wren used that control to secretly and fraudulently assign patent rights licensed to Scottrade to Variant and that Wren concealed such assignment in contravention of Scottrade's legal rights. Finally, Scottrade asserts that it has lost monies owed under the License Agreement. The Court finds these pleadings sufficient under *Twombly* and will deny Defendants motion to dismiss with respect to Scottrade's claim for alter ego liability.

### E. Motion to Compel Arbitration

Defendants renew their motion to compel arbitration previously denied by Judge Autrey, arguing that under the doctrine of "alternative estoppel," a non-signatory to an agreement can compel a signatory to arbitrate where the relationship between the parties is based on the concerted misconduct of the defendant and a different signatory. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 833 (8th Cir. 2010). Defendants contend that the parties are

inextricably intertwined such that they should be compelled to arbitrate Plaintiff's claims. Judge Autrey considered, and denied, Defendants' motion under Missouri law. (Op., Mem. and Order of January 31, 2014, ECF No. 41)

"The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citation omitted). In Missouri, courts have rejected the "inextricably intertwined" argument. *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361-62 (Mo. 2006) ("to the extent these appellants contend that they should be allowed to compel arbitration under the related theory that the claims against them are 'inextricably intertwined with those against Pro Net,' that theory is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties."). Further, as in *Netco, Inc.*, Scottrade is not claiming that Wren failed to perform a term of the agreement but that he tortiously interfered with the License Agreement between Scottrade and Holdings. *Id.* at 361. Thus, Defendants' motion to compel arbitration is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, to Compel Arbitration (ECF No. 94) is **GRANTED** in part and **DENIED** in part, consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's claims for Constructive Trust (Count IV) and Action to Enforce Arbitration Award (Count V) are **DISMISSED.**

Dated this __30th__ day of July, 2015.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**