UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTTRADE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13CV1710 RLW |
| | ) |
| VARIANT, INC., and | ) |
| STEPHEN C. WREN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 106). The motion is fully briefed and ready for disposition. Upon review of the motion and related memoranda and exhibits, the Court will deny Defendants' motion.

## Background

Defendant Stephen Wren is the inventor of certain new and useful improvements in a system for electronically communicating between remote facilities and for facilitating transactions between central and remote facilities. (First Am. Compl. ["FAC"] ¶ 9, ECF No. 89; Assignment of Rights, Pl.'s Ex. A, ECF No. 64-2) These inventions are the subject of three patents ('514, '044, and '900). (*Id.*) On November 6, 2000, Wren assigned his intellectual property rights in the inventions to Variant Holdings, LLC ("Holdings"). (FAC ¶ 10) On that same date, Plaintiff Scottrade, Inc. ("Scottrade") entered into a License Agreement with Holdings, creating a partnership called Synerty. (License Agreement, Pl.'s Ex. B, ECF No. 64-3; Jung Depo., Defs.' Ex. A p. 151, ECF No. 108-1) The purpose of Synerty was to exploit patent rights and know how associated with the inventions. (*Id.*)

According to the License Agreement, Holdings and Scottrade each had 50% ownership of Synerty. (License Agreement, Pl.'s Ex. B ¶ 8(a), ECF No. 64-3) The agreement granted to Scottrade a nonexclusive, non-assignable license to use Holdings' intellectual property rights throughout the U.S. and all foreign countries and an exclusive, non-assignable license to use Holdings' intellectual property rights throughout the U.S. with regard to financial service companies. (*Id.* at ¶ 3) Holdings also granted Synerty a license to use any future patents. (*Id.* at ¶ 4) Further, the License Agreement allowed Holdings to license the rights for use of future patents to others with whom Holdings formed a license agreement, subject to Scottrade's right of first refusal. (*Id.* at ¶¶ 4, 5) Scottrade had the right to enter into any subsequent agreements concerning the intellectual property rights to the exclusion of a third party within 60 days from the time Scottrade was notified in writing of the terms of the third party agreement. (FAC ¶¶ 21-23, License Agreement, Pl.'s Ex. B ¶ 5, ECF No. 64-3) In addition, the agreement required Scottrade to pay minimum royalty payments to Holdings, and, if Scottrade chose not to pay the minimum royalty, the license grant would be converted to a non-exclusive grant. (*Id.* at ¶ 8) Further, Synerty was to bear the cost of all patent prosecutions. (*Id.* at ¶ 12) Synerty and Holdings agreed to cooperate to prevent any infringement of issued patents. (*Id.* at ¶ 14) Holdings could terminate the agreement if Synerty defaulted in making any payment or report in accordance with the agreement; if Synerty became insolvent; or if a receiver was appointed to take over Synerty's business. (*Id.* at ¶ 15) If a dispute arose, the parties agreed to submit to arbitration and abide finally by any decision of the arbitration proceeding. (*Id.* at ¶ 18)

Although Scottrade and Holdings were equally responsible for the costs of prosecuting patents, Scottrade funded all the expenses and prosecution costs from 2000 to 2003. (Jung Depo., Pl.'s Ex. B p. 70, ECF No. 113-2) Also during that time period, Scottrade invested

2

$700,000 in the Partnership. (Defs.' Ex. H, ECF No. 108-8) Additionally, for those three years after the parties formed Synerty, it suffered losses totaling nearly $700,000. (Jung Depo., Defs.' Ex. A pp. 62-63, 81-85, ECF No. 108-1) For the fiscal years 2004 and after, there was no income or expense to report, so Scottrade did not file tax returns. (*Id.* at pp. 84-85) Wren and Scottrade agreed that the losses would be allocated to Scottrade. (Jung Depo., Pl.'s Ex. A pp. 82-84) In March 2004, counsel for Scottrade notified Wren and Holdings that Scottrade would use the royalty payments due to Wren to offset Holdings' portion of the patent prosecution expenses but that Scottrade would not continue to advance Holdings' share of the expenses. (Defs.' Ex. D, ECF No. 108-4)

In October 2003, Wren notified Scottrade that Holdings was terminating the License Agreement because Scottrade had failed to make the required minimum royalty payments. (Jung Depo., Defs.' Ex. A p. 50, ECF No. 108-1; Defs.' Ex. D, ECF No. 108-4) Scottrade declined to honor Wren's attempted termination, and the parties submitted to arbitration. (Jung Depo., Defs.' Ex. A p. 50; ECF No. 108-1; Defs.' Ex. D, ECF No. 108-4) The Arbitrator found that each party retained all of its rights under the agreement and that each party was responsible for 50% of the costs, with any amounts contributed by Scottrade in excess of 50% deemed an advance. (FAC ¶¶ 71-72; Award of Arbitrator, Pl.'s Ex. C, ECF No. 64-4) The Arbitrator did not award monetary damages to either party. (*Id.*) Despite this Award of Arbitrator, Holdings never paid or reimbursed Synerty's costs. (FAC ¶ 73)

On January 20, 2005, Holdings sent a second notice of termination of the agreement, arguing that Synerty was insolvent. (Defs.' Ex. F, ECF No. 108-6) Scottrade denied knowledge of any liabilities that would cause Synerty to be insolvent such that Holdings could terminate the agreement. (Defs.' Ex. G, ECF No. 108-7; Jung Depo., Pl.'s Ex. A pp. 79-80, 138, ECF No.

113-1) Scottrade sent Holdings another royalty check, but Holdings rejected the payment and maintained that the joint venture was terminated. (Defs.' Ex. H, ECF No. 108-8; Jung Depo., Pl.'s Ex. A pp. 50-51, ECF No. 113-1) Scottrade then ceased remitting royalty checks. (Defs.' Ex. G, ECF No. 108-7)

According to Scottrade, Wren formed an alter ego corporation called Variant, Inc. ("Variant"), licensed to it all of Holdings' patent rights, including the rights to exploit Wren's intellectual property. (FAC ¶ 26; Jung Depo., Pl.'s Ex. A pp. 29-30, ECF No. 113-1) Wren granted an exclusive license for the Intellectual Property Rights to this new corporation without notifying Scottrade and honoring its right of first refusal. (Jung Depo., Pl.'s Ex. B pp. 39-40) Thus, Variant became the exclusive licensee of patents '900 and '044, issued on May 27, 2008 and November 24, 2009, respectively. (FAC ¶¶ 19-20, 30-31; Pl.'s Exs. D & E, ECF Nos. 64-5, 64-6) Shortly thereafter, Variant began filing numerous lawsuits against a variety of entities for infringement of the '044 and '900 patents. (FAC ¶ 33) Scottrade maintains that Variant obtained in excess of four million dollars in settlement payments, which Scottrade was entitled to. (FAC ¶ 34; Jung Depo., Pl.'s Ex. B pp. 75-80, ECF No. 113-2) Plaintiff Scottrade learned of the lawsuits when a defendant in one of the infringement actions subpoenaed Scottrade. (FAC ¶ 35; Jung Depo., Pl.'s Ex. A p. 43, ECF No. 113-1; Pl.'s Ex. B pp. 30-31, ECF No. 113-2)

On July 30, 2015, this Court granted in part and denied in part Defendants' Motion to Dismiss. The remaining counts are Count I for alter ego liability, Count II tortious interference, and Count III for unjust enrichment. Currently pending is Defendants' Motion for Summary Judgment on those counts.

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-

supported motion for summary judgment. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1191 (8th Cir. 1995).

### Count II – Tortious Interference with a Contract

Under Missouri law, to prove a claim for tortious interference with a contract or business expectancy, a plaintiff must show: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012) (citation omitted). Defendants first maintain that Scottrade is unable to establish tortious interference because the License Agreement was terminated due to Synerty's insolvency, such that no contract existed between the parties. Defendants also argue that Scottrade is estopped from denying termination of the contract based on its conduct after 2005. Scottrade, on the other hand, asserts that the Arbitration Award found that the agreement remained in force; Defendants have not shown that Synerty was insolvent; and Scottrade is not estopped from asserting its claim because it has no knowledge of the infringement suits.

Defendants contend that no contract existed because the License Agreement was effectively terminated due to Synerty's insolvency. However, Scottrade has shown that, not only did it reject Defendants purported termination of the agreement, but the Arbitrator found the License Agreement valid and enforceable in 2005, after the first attempted cancelation. Further, Plaintiff Scottrade has shown that a genuine issue of material fact exists as to whether Synerty was actually insolvent. While Defendants assert that Synerty was unable to meet its debts, Scottrade's evidence creates a genuine issue that Synerty's liabilities did not exceed its assets.

6

Nothing in the evidence presented by Defendants definitively shows that Synerty stopped paying, or was unable to pay, its debts, or that it was insolvent under Missouri or federal law.

Defendants also argue that Scottrade waived its right to claim a share of the infringement lawsuit proceeds because it stopped paying royalty checks and treated the partnership as defunct for more than eight years. "Under Missouri law, waiver is 'the intentional relinquishment of a known right.'" *TAMKO Bldg. Prods., Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1139 (E.D. Mo. 2012) (quoting *Shahan v. Shahan*, 988 S.W.2d 529, 534 (Mo. 1999)). Further, "'if waiver is implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right.'" *Id.* (quoting *Smith v. Progressive Cas. Ins. Co.*, 61 S.W.3d 280, 284 (Mo. Ct. App. 2001) (internal quotation and citation omitted)). Missouri courts highly disfavor the equitable remedy of estoppel, which "arises 'from the unfairness of permitting a party to belatedly assert rights if he know of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions.'" *Id.* (quoting *Stenger v. Great S. Sav. & Loan Ass'n*, 677 S.W.2d 376, 383 (Mo. Ct. App. 1984)).

Here, Scottrade's behavior does not rise to the level of a waiver. It sent a royalty check to Holdings, demonstrating its desire to continue the partnership. Holdings sent the check back, at which time Scottrade stopped sending checks. However, Scottrade's actions fail to indicate that it clearly and unequivocally relinquished a known right to pursue its patent rights under the License Agreement. Indeed, Scottrade asserts that it was unaware that Defendants were filing lawsuits related to the infringement of the two patents at issue. Further, Scottrade has alleged bad faith on the part of Wren in that he did not notify Scottrade of the patent lawsuits or give it the right of first refusal.

Next, Defendants reiterate that a party cannot intentionally interfere with its own contract and Defendants were permitted to grant the licenses to third parties to bring infringement suits. As this Court previously determined, Wren took the actions to incorporate Variant and then exploit the patents with regard to Defendant Variant, not Holdings, with which Scottrade had the agreement. The fact that Scottrade regards the entities as one and the same for purposes of alter ego liability does not change the facts alleged by Scottrade that Wren and Variant interfered with the License Agreement between Scottrade and Holdings.

Defendants' cases in support of its motion for summary judgment are inapposite to the present facts. For instance, in *Zipper v. Health Midwest*, a doctor alleged that hospital board members tortiously interfered with his contract with defendant hospital by participating in the hospital's decision to revoke doctor's staff privileges. 978 S.W.2d 398, 419 (Mo. Ct. App. 1998). The *Zipper* court held that the defendant board members could not be held liable for tortious interference because they were sued, not as a third party, but as directors of the hospital. *Id.* at 419-20. In a recent case before the Missouri Supreme Court, *Farrow v. Saint Francis Med. Ctr.*, the court held that the plaintiff, a nurse at the hospital, could not maintain a tortious interference action against her supervisor doctor, who criticized her performance, leading to her termination. 407 S.W.3d 579, 602 (Mo. 2013). The court reasoned that the doctor, while acting as plaintiff's supervisor, was the hospital's agent, not a third party. *Id.*

Here, Plaintiff has alleged that Wren and Variant took individual and independent actions, not on behalf of Holdings, when Defendants tortiously interfered with the contract between Scottrade and Holdings. Further, "'[f]or a corporate officer [or agent] to be liable for tortiously interfering with a contract of a corporation, he or she must not only have acted out of self interest[,] but he or she must also have used an improper means.'" *Mackey v. ACL Transp.,*

*LLC*, No. 4:09-CV-1159 (CEJ), 2009 WL 3517534, at *2 (E.D. Mo. Oct. 23, 2009) (quoting *Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo. Ct. App. 1991)). Scottrade sufficiently demonstrates a genuine dispute as to whether Wren and Variant used improper means out of self-interest to interfere with the License Agreement between Scottrade and Holdings.

In addition, Scottrade has shown that a genuine issue of material fact exists as to whether Wren was justified. Plaintiff has the burden of producing substantial evidence to demonstrate a lack of justification. *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (internal quotations and citation omitted). Further "'[i]f the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests.'" *Id.* (quoting *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 316-17 (Mo. 1993)). Here, Scottrade has established that Wren did not give Scottrade a right of first refusal before giving an exclusive license to Variant, Inc. (Jung Depo., Pl.'s Ex. B p. 40, ECF No. 113-2) Defendants claim that the License Agreement permitted the licenses granted in the patent infringement lawsuits. However, contrary to Defendants' assertion, the right to exploit the intellectual property rights was not an unqualified right, but one that was subject to a right of first refusal after notification in writing of the terms of the agreement with a third party. (License Agreement, Pl.'s Ex. B ¶ 5; ECF No. 64-3); *see also HM Compounding Servs., Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1858 JAR, 2015 WL 4162762, at *14 (E.D. Mo. July 9, 2015). Further, Scottrade has alleged that at least two of the infringement lawsuits were against financial service companies and that Scottrade had an exclusive license to exploit the patents against financial service companies. (Pl.'s Mem. in Opp'n p. 15, ECF No. 112) Such failure to

9

notify Scottrade raises a genuine dispute as to whether Wren and Variant employed improper means to further Wren's own interests.

Finally, Scottrade has alleged sufficient facts to show damages because, after investing in the joint venture, Wren used that investment to receive more than $4 million in settlement payments. Defendants argue that Scottrade suffered no damages because it used royalty payments to offset contributions, failed to pay royalties due after off-set, and allocated tax losses to itself. However, this does not speak to the monies Wren received by forming Variant and granting it a license and pursuing infringement litigation without notifying Scottrade and offering a right of first refusal. Based on the foregoing, the Court finds that a genuine issue of material fact exists with regard to Scottrade's tortious interference claim such that summary judgment in favor of the Defendants is not warranted.

## Count III – Unjust Enrichment

The elements of a claim for unjust enrichment under Missouri law are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of the fact of such benefit by the defendant; and (3) acceptance and retention of that benefit under circumstances in which retention without payment would be inequitable. *Gannon Int'l, Ltd. v. Blocker*, No. 4:10CV0835 JCH, 2011 WL 111885, at * 13 (E.D. Mo. Jan. 13, 2011) (citation omitted). Here, Plaintiff has presented facts indicating that it invested $700,000 in the partnership between 2001 and 2003. (Defs.'s Ex. H, ECF No. 108-8) This investment went to the patent prosecution efforts, which Scottrade has alleged resulted in at least $4 million solely to Wren for his benefit, and none of the settlement proceeds to Scottrade. While Defendants suggest that Scottrade's original investment was offset by the withholding of royalty payments, a genuine issue of material fact still exists as to whether Scottrade's original investment benefitted Wren, thus allowing him to

obtain the patents, form a new company, and exploit the patents to his benefit. *See Zipper*, 978 S.W.2d at 412-13 (finding plaintiff adduced sufficient facts to defeat summary judgment on an unjust enrichment claim where he expended money for medical building renovations benefitting defendants, who refused to sell or compensate for such financing). Thus, the Court finds a genuine issue of material fact exists with regard to whether Wren was unjustly enriched such that Defendants are not entitled to summary judgment.

### Count I – Alter Ego Liability

Finally, Wren claims that he is entitled to summary judgment on Scottrade's claim for Alter Ego liability because Wren is entitled to summary judgment on all other counts, and there can be no "alter ego" liability to impose on him. Because the Court finds that Defendants are not entitled to summary judgment on Scottrade's tortious interference and unjust enrichment claims, Defendants' motion for summary judgment on Count I will also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 106) is **DENIED.**

Dated this 7th day of August, 2015.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**